WATERVILLE TRUST COMPANY *vs.* CHARLES E. LIBBY.

Waldo.    Opinion December 10, 1903.

*Bills and Notes.*   Consideration.   Accommodation Paper.

To an action upon a joint and several promissory note signed by the defendant and several other makers, payable to the plaintiff or its order, the defense was that there was no consideration for the note and that it was given as an accommodation for the payee, the plaintiff. The case was submitted to the law court upon a report of the evidence, taken by the presiding justice in the court below, and the parties stipulated that the law court be invested with jury powers and to draw all legal inferences that a jury might, and was to render such decision as the legal rights of the parties might require.

The history of the transactions of which this note was the outcome is lengthy and full of detail and, being stated in the opinion, need not be repeated here.

*Held;* that there was a full consideration for the note; that it was not given as an accommodation to the payee; and that an action thereon can be maintained against any one of the joint and several promissors.

On report.   Judgment for plaintiff.

The case is stated in the opinion.

*C. F. Johnson,* for plaintiff.

*R. W. Rogers and Enoch Foster,* for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

WISWELL, C. J.    This is an action upon a joint and several promissory note signed by the defendant and several other makers. The note was dated January 18, 1900, was for $10,000, payable to the plaintiff or its order, and became due on the twenty-sixth day of February, A. D. 1900. The defense is that there was no consideration for the note and that it was given as an accommodation for the payee, the plaintiff. The case comes to the law court upon a report of the evidence.

The history of the transactions of which this note was the outcome, is very lengthy and full of detail, but the following is a sufficient statement of the facts involved to show the contentions of the parties and the reasons for the decision of the court: For some years prior to his death, which occurred upon Oct. 12, 1899, Mr. Isaac C. Libby was the president of the Waterville Trust Company, treasurer of the Lewiston, Brunswick and Bath Street Railway, and acted as treasurer of an association of individuals known as the Lewiston, Brunswick and Bath Syndicate, which association constructed a portion of the road of the street railway company and remained in possession and in operation of the road until March 1, 1899, both of which corporations and the association are more or less intimately connected with the facts involved in the case.

Sometime in August, 1899, Mr Libby, as president of the Waterville Trust Company, bought for that institution, and with its funds, two notes, each for $10,000, made by Frank O. Squire & Company, payable to and indorsed by John P. Squire & Company and also indorsed by Squire & Company, one of which notes matured upon February 26, 1899. On or about Oct. 7, 1899, the Trust Company became in need of funds and found it necessary to re-discount some of its bills receivable; at that time Mr. Libby was quite sick but was still able to attend to business to some extent and, according to the impression of the treasurer of the Trust Company, drove to the bank on the forenoon of that day, but did not get out of his carriage. However that may be, and there may be some doubt concerning it, in the afternoon of the same day the treasurer of the Trust Company went to Mr. Libby's residence and had an interview with him in regard to obtaining the funds for the Trust Company, by re-discounting $30,000 worth of its notes, made up by the two Squire notes and two other notes of $5000 each. The Trust Company's correspondent in Portland had agreed to discount one of the Squire notes, and its correspondent in Boston had agreed to discount the two $5000 notes. Some little difficulty was experienced in getting the second Squire note re-discounted, although apparently not at all by reason of any question as to the worth of this note. Either Mr. Libby or some one else telephoned to a Savings Bank in Waterville to see

if that bank would take the note, but was unsuccessful in this attempt. Finally an arrangement was made whereby Mr. Libby borrowed the sum of $10,000 of a Waterville Savings Bank upon his own note and collateral, deposited that sum to his credit in the Trust Company, and gave the latter his check for $10,000, less the unearned discount on the Squire note and took that note.

Shortly afterwards Mr. Libby directed his confidential clerk to place that note among the assets of the Lewiston, Brunswick and Bath Street Railway in order to make good any deficiency that there might be in his accounts as treasurer of this latter corporation. The Squire note was negotiable without the indorsement of the Trust Company, and was taken by Mr. Libby without its indorsement and placed among the assets of the railway company without his indorsement. A few days later, on the twelfth of the same month, Mr. Libby died, and within a week or ten days thereafter Mr. S. A. Nye was elected treasurer of the corporation to fill the vacancy thereby caused; a committee was also appointed, of which Mr. Heath of Augusta was chairman, to audit the accounts of the late treasurer and to see if the funds belonging to the corporation were on hand. Their auditing began early in November, 1899, and was as of the first day of that month; upon the completion of their work the committee found that there should be in the treasury in cash something over $57,000; when called upon by the committee to produce this amount, or evidences of it, the new treasurer and the clerk of the deceased treasurer, in the presence of the defendant, presented to the committee bank books showing balances in three banks, to the credit of the corporation, amounting to something over $47,000, precisely $10,000 less than the amount that should have been on hand in cash; at the same time, this Squire note was also produced as a part of the funds of the corporation, so that with this latter note, counted as cash to its face value, the exact amount called for was produced. But the committee, through its chairman, refused to accept this note as cash and as a part of the funds of the corporation, and told the defendant, a son of the deceased treasurer, and who either then had been, or was to be, appointed administrator, with his brother, that this note must be taken up and the cash put in its place. There is

some controversy as to just what reply was made by the defendant
at that time, but all of the witnesses agree that Mr. Libby at least
said that there should be no trouble about this note, which was still
supposed to be perfectly good.

Several conferences took place between Mr. Heath and the defend-
ant in regard to this matter, the former always insisting that this note
should be replaced with cash.   But nothing was done in that direc-
tion until January 18, 1900, when there was a meeting at Waterville
between Mr. Heath and the members of the so-called, Lewiston,
Brunswick and Bath Syndicate.   Up to that time there had never
been a final settlement between the street railway company and the
syndicate.   The former was indebted to the members of the latter in
a considerable sum, which, at a previous meeting of the corporation
had been determined upon, as well as the method of making a settle-
ment of the same by the issuance and delivery of stock in the street
railway corporation to the members of the syndicate.   Mr. Heath,
acting as counsel for the corporation, had made all of the necessary
preliminary arrangements, including obtaining authority to issue new
and additional stock, and, on that day, met the members of the syn-
dicate in Waterville for the purpose of completing the settlement in
accordance with the arrangement previously made.

Many of the witnesses thought and testified that there was a meet-
ing of the directors of the street railway corporation upon that day,
but Mr. Heath, clerk of the corporation and also its counsel, says that
there was no meeting of the directors of the corporation upon that
occasion, and his means of information upon that subject appear to be
better than those of the other witnesses.   It is, perhaps, not surprising
that there should be some confusion in the minds of these witnesses
in regard to this subject, since the members of the syndicate were the
active directors of the street railway corporation.   At this meeting,
which, in accordance with the testimony of Mr. Heath, was for the
purpose of effecting a final settlement between the members of the
syndicate and the corporation, Mr. Heath representing the corporation
and being authorized to carry out the previously arranged settlement,
it appeared that the Squire note had not been taken up by the repre-
sentatives of the Libby estate, but was still held by Mr. Nye, the

new treasurer, as a part of the funds or assets of the corporation. When this fact became known to Mr. Heath, who previously· had had .reason to believe that the note had been replaced with cash, and had so reported to the corporation, he refused to proceed further in the settlement until this matter was arranged and until the sum of $10,000 in cash was paid into the treasury of the˙ corporation, to make good the deficiency in the accounts of the late treasurer.

Previous to this, on December 23, 1899, all of the parties upon the Squire note having failed and made an assignment on the fifteenth of that month, the executive committee of the directors of the Trust Company passed this vote: "At a meeting of the directors of the Waterville Trust Company it was voted to assume any loss that might be sustained on the $10,000 note of Frank O. Squire & Co., dated August 26, 1899, on six months time, indorsed John P. Squire & Co. and Squire & Co., that our late president, I. C. Libby took out of the bank and placed therein the proceeds expressly and solely on account for and in the interests of the bank as an accommodation."

After more or less negotiation and conference between Mr. Heath, representing the street railway company, and the representatives of the Libby estate, and their counsel, which was also participated in by the treasurer of the corporation and various members of the so-called syndicate, an arrangement was made whereby Mr. Nye, the treas-˙urer, some of the other members of the syndicate, the defendant and his brother and co-administrator, Arthur P. Libby, made and signed the note in suit running to the Waterville Trust Company for $10,000; thereupon they had this note discounted by the Trust Company, Mr. Arthur P. Libby paying the discount, and received that sum of the Trust Company which was placed to the credit of the street railway corporation, thereby making good in the treasury of that corporation the amount of money required. At the same time the makers of this note received from the treasurer the Squire note and left it with the Trust Company as collateral for the note in suit. Both the principal note and the collateral note matured upon the same day. This sum having. been placed to the credit of the corporation, the parties proceeded to carry out the terms of the settlement.

The defendant claims that he was induced to sign this note by reason of the vote of the executive committee of the directors of the Trust Company, above quoted, and also by reason of representations that were made at the time of giving the note by some of the gentlemen who were members of the syndicate and who were also members of the executive committee of the Trust Company; that the Squire note all the time belonged to the Trust Company, and that any loss thereon fell upon the Trust Company and had been assumed by it, and that the note in suit was only given as a temporary expedient in order that the bank might have something to show for the money borrowed until the maturity of the Squire note, and was therefore simply an accommodation for the Trust Company.

We think that the decision of this case depends upon the determination of the question as to whether or not Mr. Isaac C. Libby, on October 7, bought this Squire note of the Trust Company, taking it without the indorsement of the latter, or whether the transaction was a loan by him to the Trust Company, the Squire note being taken as evidence of that loan and as security for it. Because, notwithstanding the vote of the executive committee, it is evident that neither this committee nor the directors of the Trust Company had the power or authority to gratuitously and needlessly assume for the bank a liability which did not previously exist. If the Squire note was sold to Mr. Libby on October 7, without the indorsement of the Trust Company, and without any contingent liability upon the part of that company, then the directors, after the failure of the maker and indorsers of this note, could not assume for the Trust Company a liability which did not previously exist. The attempted voluntary assumption of such a liability or loss, under these circumstances, would be precisely equivalent to making a gift from the funds of the institution to the person upon whom the loss in fact fell, which, it is needless to say, is beyond the power of the directors of a financial institution. These principles are so fundamental and well settled that they do not need the support of authorities; a discussion, however, of the subject may be found in Morse on Banks and Banking, section 127. But if, upon the other hand, this note was simply taken by Mr. Libby as evidence of and collateral for a loan made by

him to the Trust Company, then the vote relied upon was authorized, and, in fact, the latter would have to assume any loss that might occur on the Squire note without such a vote.

Nor is it important to determine as to what statements or representations were made by the directors of the Trust Company at the time the note in suit was given, because at that time these gentlemen were not assembled in a meeting of the board of directors or executive committee of the bank, and were not even acting in the capacity of directors, but they were present as members of the syndicate attending to business matters which concerned their individual interests and were acting solely in their own behalf.

A careful consideration of all of the testimony and of all of the circumstances bearing on this transaction satisfies us that on October 7, 1899, Mr. Libby bought, and thereafter became the owner of, the Squire note. The treasurer of the Trust Company so testifies; he says that he suggested indorsing it but that Mr. Libby replied that he did not care for the bank's indorsement, saying that the note was perfectly good and that by taking it without indorsement it would lessen the amount of bills re-discounted which would show upon the bank's books. This testimony is uncontradicted, except that the clerk of Mr. Libby thinks he was present during the transaction and heard no such conversation. Mr. Libby paid to the Trust Company the precise amount of the then present worth of the note; he received for himself out of the transaction the unearned discount on the note, amounting to $191.66. If he had intended to make a loan to the Trust Company for the purpose of temporarily relieving it while in need of funds, it does not seem to us that it would have been natural for him to have done this. Again, after the transaction, he treated the note in all respects as if it were his own property and not as collateral received as security for a loan; he instructed his clerk to place it among the cash assets of the street railway corporation in order to make good a shortage of cash of exactly that amount in his account as treasurer; this was done and was thereafter held by him as treasurer, and by his clerk for him, during the few days thereafter that he lived. After the election of the new treasurer the note was turned over to him, with the knowledge of the defendant, and

held by him until January 18, although as he claims, it was taken by him temporarily with the promise or understanding that it should be taken up by the Libby estate, but however, this may be, it is immaterial, because it is clear that the new treasurer had no authority to accept this note as a portion of the cash required in the treasury.

The only argument against this conclusion is the alleged unreasonableness of the proposition that Mr. Libby should purchase this note with funds that he was obliged to borrow at the time, and without the chance of profit to himself. But in answer to this, it must be remembered that he was the president of the Trust Company, and on that account largely interested in its welfare, that he himself had purchased this note for his company only a short time before, and that all concerned supposed the note was of undoubted value and would be paid at its maturity in the month of February following.

Our conclusion being, for the reasons given, that Mr. Libby bought the Squire note without requiring the indorsement and consequent contingent liability of the Trust Company, it follows, that on the 18th day of January, when the note in suit was given, the Libby estate was indebted to the corporation to the amount of $10,000, and the estate owned the Squire note which had been temporarily placed in the treasury of the corporation as security for that indebtedness. Consequently, when the defendant and others gave the note in suit to the Trust Company, and obtained thereon the full amount of the note, less the discount, which was used for the purpose of paying the indebtedness due from the Libby estate to the railway corporation, the makers of the note received and the Trust Company parted with a full and ample consideration for the note, and the Libby estate paid its indebtedness to the corporation, payment of which could have been undoubtedly enforced by the corporation if it had not been thus satisfied.

We have seen that the vote of the executive committee of the Trust Company, under the facts found by the court, does not afford a defense to this action, because that vote was unauthorized and void. Nor can the defendant successfully defend upon the ground that he signed the note in suit relying upon this vote, and that the plaintiff is

now estopped to deny its validity or the authority of the executive committee to pass it.   Because he was, as he says, a member of that committee, he was in possession of at least as much knowledge in regard to the transaction as were any of the members of the committee; in fact, two of the members of the committee testified that the vote was passed because of the representations of the defendant's co-administrator, and that it was through inadvertence that the Squire note was not indorsed when taken by Mr. Libby.   The defendant is presumed to have known that the passage of this vote was beyond the power and authority of the executive committee, if the note was bought by his father.

We, therefore, find that there was a full consideration for the note, that it was not given as an accommodation to the payee, and that an action thereon can be maintained against any one of the joint and several promissors.

*Judgment for plaintiff for $10,000 and interest from Feb. 26, 1900.*